## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Timothy Allen Parsons, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 874 C.D. 2016 |
| | : | Submitted: January 6, 2017 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | |

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE JOSEPH M. COSGROVE, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  March 17, 2017**


Appellant Timothy Allen Parsons (Licensee) appeals from an order of the Court of Common Pleas of Washington County (trial court), dated April 27, 2016.  The trial court denied Licensee's appeal and sustained the Department of Transportation's (Department) 18-month suspension of his operating privilege pursuant to Section 1547 of the Vehicle Code (Code), 75 Pa. C.S. § 1547(b), commonly referred to as Pennsylvania's Implied Consent Law, for his refusal to submit to chemical testing.  For the reasons that follow, we affirm.

On February 23, 2016, the Department mailed a letter to Licensee, notifying him that his driving privileges would be suspended for a period of

eighteen months for failing to submit to chemical testing.[1] Licensee appealed to the trial court, which conducted a *de novo* hearing on April 27, 2016. At the beginning of the hearing, Licensee averred that the trial court did not have jurisdiction, seemingly on the basis that he was arrested without a warrant. The trial court denied Licensee's jurisdictional argument and then proceeded to hear testimony.

The arresting officer, Officer Dustin Devault, testified before the trial court to the following facts. On January 22, 2016, he was at the Monongahela 7-Eleven, having proceeded there in his cruiser. (April 27, 2016 Hr'g Notes of Testimony (N.T.) at 9). Officer Devault observed Licensee enter his vehicle and leave the 7-Eleven. (*Id.*) He noticed Licensee turning without a turn signal, failing to stop at a stop sign, driving at excessive speeds, and crossing the double yellow center lines. (*Id.* at 9-10.) Officer Devault testified that after he pulled over Licensee, Licensee twice exited his vehicle and walked toward Officer Devault's police vehicle. (*Id.* at 11-13.) Officer Devault further testified that both times

---

[1] Section 1547(b) of the Code provides, in pertinent part:

(b) Suspension for refusal.—

(1) If any person placed under arrest for a violation of [S]ection 3802 [of the Code] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

(ii) For a period of 18 months if any of the following apply:

(A) The person's operating privileges have previously been suspended under this subsection.

2

Licensee approached the police vehicle Licensee was swearing at Officer Devault. (*Id.*) Officer Devault drew his weapon and began to handcuff Licensee, who struggled and pushed the officer. (*Id.* at 13-14.) Officer Devault placed Licensee in his police vehicle. (*Id.* at 15.) Licensee was argumentative and continued to swear at him. (*Id.*) Officer Devault testified that Licensee's eyes were bloodshot and he smelled like alcohol. (*Id.*) Officer Devault arrested Licensee for driving under the influence of alcohol and transported him to Monongahela Police Station, where he refused to submit to a field sobriety test or chemical blood test. (*Id.* at 15-19.) Officer Devault transported Licensee to Monongahela Valley Hospital, and again Licensee refused testing. (*Id.* at 19-20.)

On cross-examination, when Licensee asked if Officer Devault was sitting in the parking lot when Licensee entered the lot, Officer Devault responded that he pulled into the lot at approximately the same time that Licensee did. (*Id.* at 24.) When asked if he was sitting in plain view when Licensee left, Officer Devault responded that he was. (*Id.*) Licensee asked Officer Devault detailed questions about almost every aspect of Officer Devault's actions during the relevant time period. (*Id.* at 24-43.) Licensee's position, contesting Officer Devault's account of the events on January 22, 2016, is best summarized by this question on cross-examination:

> Isn't this true? I did not use the word [expletive] or [expletive] the whole time. I did not push you. You did not draw your weapon. I complied with all your orders. I utilized my turn signals. I stopped at the stop sign. I was not speeding. I did not cross into the other lane. My tires did not cross the double line. I did not swerve. You were not sitting in the 7-Eleven parking lot. You opened the door at the 7-Eleven for me. You were swiping your card when I exited the 7-Eleven parking lot. You're purging [sic] yourself here today.

(*Id.* at 43.)

Licensee testified on direct examination that he had a video from the 7-Eleven showing Officer Devault opening the door for Licensee, standing in line behind Licensee, and swiping his credit card as Licensee was exiting the parking lot. (*Id.* at 46.) Licensee testified that the video depicts Officer Devault at the register and looking the opposite direction from Licensee as Licensee exited the parking lot. (*Id.* at 50.) According to Licensee, the video demonstrates that Officer Devault perjured himself when he wrote in his affidavit of probable cause that he "had been sitting in the parking lot of the 7-Eleven when I observed a white Ford Fiesta, failed to use his left-hand turn when entering Chess Street."[2] (*Id.* at 43-52.) Licensee implied that, because Officer Devault allegedly lied in his affidavit, Officer Devault's testimony regarding the entire incident was untrue. (*Id.* at 54-57.) Licensee testified that Licensee never used an expletive; Licensee did not push Officer Devault; Officer Devault did not draw his weapon; Licensee complied with all of Officer Devault's orders; and Licensee utilized his turn signals. (*Id.* at 57.)

Licensee eventually played the video in court, but he did not attempt to introduce the video into evidence. (*Id.* at 58.) Licensee described the video as showing Officer Devault in the store swiping his card while Licensee was backing his car up and exiting, such that it would have been impossible for Officer Devault to see the events to which he testified. (*Id.* 58-60.) The Department's counsel noted that, according to the time on the video, Officer Devault left the 7-Eleven approximately one to one-and-one-half minutes before Officer Devault observed

---

[2] It does not appear that Licensee offered the affidavit of probable cause into the record.

4

Licensee's driving. (*Id.* at 59, 71.) The trial court noted that the video shows Licensee's vehicle moving away, but it does not depict what happened to his vehicle upon entering the highway, so it was not contradictory. (*Id.* at 72.)

Ultimately the trial court stated, "as far as credibility goes, I find that the Commonwealth has sustained its burden of proof." (*Id.* at 74.) The trial court denied Licensee's appeal and recommended that the Department delay enforcement for two months to allow Licensee to appeal to this Court. (*Id.* at 75-76.) This appeal followed.

On appeal,[3] Licensee argues that the trial court erred in two respects. First, according to Licensee, the trial court failed to address Licensee's claim that it lacked jurisdiction. Licensee continues to argue that the trial court lacked jurisdiction and that it was the Department's burden to establish jurisdiction. According to Licensee, there are no facts of record that grant jurisdiction to the trial court. Licensee also argues that the video from the 7-Eleven contradicts the statements by Officer Devault. Licensee contends that the trial court suborned perjury by crediting Officer Devault's testimony.

First, Licensee's argument that the trial court lacked jurisdiction is without merit. This Court explicitly held that, "the courts of common pleas have jurisdiction over appeals from license suspensions and/or revocations." *Ladd v. Dep't of Transp., Bureau of Driver Licensing*, 753 A.2d 318, 321 (Pa.

---

[3] "This Court's standard of review is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed or whether the trial court's determinations demonstrate a manifest abuse of discretion." *Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 339 n.1 (Pa. Cmwlth. 2010).

5

Cmwlth. 2000); 42 Pa. C.S. § 933(a)(1)(ii). Accordingly, we reject Licensee's argument to the contrary.

Next, we address Licensee's contention that the trial court suborned perjury. This Court's standard of review in a statutory license suspension appeal does not include consideration of allegations of perjury. Rather, the Court considers whether the findings of fact are supported by substantial evidence or whether the trial court erred as a matter of law. In a driver's license suspension proceeding, the trial court is the fact finder and questions of credibility and conflicts in the evidence are for the trial court to resolve. *Schlata v. Dep't of Transp., Bureau of Driver Licensing*, 744 A.2d 814, 816 (Pa. Cmwlth. 2000). Even if Licensee attempted to contradict Officer Devault's testimony, specifically that he observed Licensee exit the parking lot without using his turn signal, with Licensee's contrary testimony and video evidence, it is the prerogative of the trial court to resolve such a conflict. We are unable to reevaluate the credibility of Officer Devault on review.

Furthermore, we observe that when a licensee files a statutory appeal from an order suspending his driving privileges based on failure to submit to chemical testing, the Department must establish that (1) the police arrested the licensee based upon reasonable grounds to believe that the licensee was operating a motor vehicle while under the influence of alcohol; (2) the police asked the licensee to submit to a chemical test; (3) the licensee refused to submit to testing; and (4) the police warned the licensee that refusing to submit to testing would result in license suspension. *Bomba v. Dep't of Transp., Bureau of Driver Licensing*, 28 A.3d 946, 949 (Pa. Cmwlth. 2011). The only aspect of Officer Devault's testimony that the video potentially contradicted was that he observed

Licensee fail to use his turn signal as he exited the 7-Eleven. Officer Devault provided additional testimony that he observed Licensee driving at excessive speeds and crossing the double yellow center lines and that Licensee's eyes were bloodshot and he smelled like alcohol. (N.T. at 9-10, 15.) This testimony is sufficient to establish reasonable grounds to believe that Licensee was operating a motor vehicle under the influence of alcohol. In light of that testimony, whether Licensee used his turn signal when exiting the 7-Eleven would not affect the outcome of this matter.

Accordingly, we affirm the trial court's order.

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy Allen Parsons,     :
       Appellant  :
           :
    v.       :  No. 874 C.D. 2016
           :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Driver Licensing    :

## **O R D E R**

   AND NOW, this 17th day of March, 2017, the order of the Court of Common Pleas of Washington County is AFFIRMED.

             _____
             P. KEVIN BROBSON, Judge