# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Belinda Davis, :
　　　　　Petitioner :
　　　　　　　　　　 :
　　　v. : No. 604 C.D. 2017
　　　　　　　　　　 : SUBMITTED: November 22, 2017
Department of Human Services, ;
　　　　　Respondent :


BEFORE:　　HONORABLE P. KEVIN BROBSON, Judge
　　　　　　　　HONORABLE PATRICIA A. McCULLOUGH, Judge
　　　　　　　　HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**　　　　　　　　　　**FILED: January 18, 2018**


　　　　　Belinda Davis (Davis), *pro se*, petitions for review of the March 22, 2017, Final Administrative Action Order of the Department of Human Services, Bureau of Hearings and Appeals (BHA), affirming the March 22, 2017, decision and order (Adjudication) of an administrative law judge (ALJ). In the Adjudication, the ALJ ruled that Child Care Information Services of Delaware County (CCIS) correctly established that it had overpaid child care subsidy benefits to Davis, but that the overpayment amount was incorrectly calculated. The Adjudication directed

CCIS to rescind its notice of overpayment, reassess the overpayment and issue a new notice.[1] We affirm.

In February 2008, Davis was receiving child care subsidy benefits in Delaware County. (Findings of Fact (F.F.) No. 1.) In April 2010, mail that CCIS sent to Davis at her address of record was returned. (F.F. No. 2.) During a redetermination period in or around October 2010, CCIS discovered that Davis's address with the County Assistance Office for her public benefits was a post office box that was linked to Davis's husband's employer. (F.F. No. 3.) On October 21, 2010, CCIS submitted a referral to the Pennsylvania Office of Inspector General (OIG) requesting that OIG investigate the current address of Davis and her family and the household's means of income. (F.F. No. 4.) The OIG investigation revealed that Davis was the owner of "Time Fly's Massage," a business created in July of 2009. (F.F. No. 5.) The investigation further revealed that Davis's household was receiving income from the following sources: Davis's self-employment, social security income for Davis's child since 2007, and unemployment compensation for Davis's husband from October 3, 2009, through July 6, 2010. (F.F. No. 6.) The investigation also revealed that Davis had not been residing at her address of record since September 2007. (Certified Record (C.R.) Item No. 7, Exhibit (Ex.) C-2; *see* F.F. No. 7.) CCIS then contacted Davis regarding the results of the OIG investigation, and Davis admitted that she was no longer residing at her address of record in Boothwyn, Pennsylvania; instead, she reported an address in Folcroft,

---

[1] Although the order remanded the matter to CCIS, Davis is permitted to appeal as of right under the circumstances here. *See* Pa. R.A.P. 311(f) & cmt. (stating an appeal may be taken as of right from an order of a government unit remanding a matter to an administrative agency for execution of the adjudication in a manner that does not require the exercise of administrative discretion, such as a computation of benefits).

Pennsylvania. (F.F. No. 8.) Subsequently, Davis failed to verify the Folcroft address and allowed CCIS to close her case as of December 23, 2010. (F.F. No. 9, Adjudication at 6.)

On March 18, 2015, based on the results of the OIG investigation, CCIS sent a Confirmation Notice (Notice) to Davis advising her that she owed an overpayment in the amount of $18,625.00 for the period of time from February 7, 2008, through December 23, 2010, due to her failure to report income from self-employment and social security benefits.[2] (F.F. No. 10; *see* C.R. Item No. 7, Ex. C-1.) Davis filed an appeal. Ultimately, an order of remand was issued directing the BHA to conduct a hearing on the merits of Davis's appeal. (Adjudication at 1; C.R. Item No. 6.)

A hearing was held on February 21, 2017, before an ALJ. (Adjudication at 1.) At the hearing, CCIS argued that its overpayment calculation was accurate based upon the information available to it at that time, but that the overpayment should actually be higher based upon current information regarding Davis's residence during the period in question. (Adjudication at 4; C.R. Item No. 11, Notes of Testimony (N.T.) at 12-13, 21-22.) Davis, on the other hand, argued that she did not fail to report income and that the overpayment calculation was incorrect. (Adjudication at 4.) Notably, Davis admitted that she was not disputing that there was an overpayment; rather, she was disputing the calculation of the overpayment. (C.R. Item No. 11, N.T. at 30.) Davis further argued that she resided

---

[2] The Notice actually states the overpayment amount is $18,625.50. (C.R., Ex. C-1.) The discrepancy is harmless here given that the Adjudication ordered CCIS to recalculate the overpayment and issue a new notice.

in Delaware County through December 23, 2010. (Adjudication at 4; C.R. Item No. 11, N.T. at 31-32.)

After the hearing, the ALJ issued an Adjudication in which she found that CCIS established an overpayment but that the overpayment was incorrectly calculated. Specifically, the ALJ determined that CCIS's overpayment calculation was based on its erroneous belief that Davis was still residing in Delaware County. Therefore, CCIS believed that Davis was still eligible for some CCIS benefits and that the overpayment resulted from the fact that Davis's co-payment would have increased because of her higher income. However, in actuality, because Davis had been residing in New Jersey as of November 28, 2008, she was not eligible to receive any CCIS benefits from November 28, 2008, until December 23, 2010, when her case closed. Thus, the ALJ determined that for the period from November 28, 2008, until December 23, 2010, CCIS should have calculated the overpayment as a full overpayment of benefits received, rather than as an overpayment based upon an increase in Davis's copayment. (Adjudication at 5-6.) Accordingly, the ALJ issued an order which (i) denied in part Davis's appeal because CCIS was correct in establishing an overpayment and (ii) sustained in part Davis's appeal because the overpayment was incorrectly calculated. The ALJ ruled that CCIS must rescind its Notice, reassess Davis's overpayment amount in accordance with the Adjudication and issue a new notice of overpayment. (Adjudication at 6.) The Chief ALJ of the BHA affirmed the ALJ's decision in a Final Administrative Action Order.

4

Davis now petitions this Court for review of the Final Administrative Action Order,[3] raising multiple issues in her statement of questions presented.[4]  In sum, Davis argues that CCIS failed to follow applicable regulations and that she should not be responsible for any claims of overpayment.  Davis contends that CCIS should not be permitted to present evidence on a closed claim.  Davis also argues that information she provided was not used in the Adjudication and that CCIS's calculations are incorrect.  She further argues that CCIS was permitted to re-submit payment calculations after the hearing but that she never received a copy.  Davis asserts that there is no accurate documentation concerning who caused the overpayment and apparently argues that CCIS violated policy because CCIS knew about the social security income while her case was open and did not disclose its knowledge to OIG.  Davis also argues that nothing prohibits her from purchasing property and that she is not required to disclose any such purchase.  Davis contends that the evidence does not establish that there are any grounds under which the Department may recoup an overpayment—i.e., that she committed fraud, that she failed to comply with Department regulations, and that she was not receiving a subsidy pending an appeal.

---

[3] Our review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether necessary findings of fact are supported by substantial evidence.  Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[4] To the extent Davis has failed to develop any issues in the argument portion of her brief, this Court is precluded from conducting effective appellate review of those issues.  *See* Pa. R.A.P. 2119 (stating the argument shall be divided into as many parts as there are questions to be argued); *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (stating that where a brief "fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived").

Under Department regulations, a parent or caretaker may be required to repay an overpayment resulting from: (i) fraud,[5] (ii) failure to comply with Pennsylvania Code, Title 55, Chapter 3041 (concerning subsidized child care eligibility); or (iii) a subsidy continuation pending an appeal when the parent or caretaker did not win the appeal. 55 Pa. Code § 3041.181. In the event of such an overpayment, "[t]he parent or caretaker shall repay the eligibility agency[6] [CCIS] or Department the full amount of the overpayment." 55 Pa. Code § 3041.185. "The eligibility agency shall pursue possible overpayments in active and closed cases, including those that were voluntarily closed." 55 Pa. Code § 3041.182(b).

Department regulations require CCIS to consider the income of family members to determine eligibility for subsidized childcare. 55 Pa. Code § 3041.32. Family members include: (i) the parent or caretaker of the child for whom the subsidy is sought; (ii) the parent's or caretaker's spouse; and (iii) children, excluding the child's earned income. *Id.* Additionally, family members must reside in the Commonwealth. 55 Pa. Code § 3041.42(a). The parent or caretaker is the primary source of verification to establish and maintain eligibility for subsidized care. 55 Pa. Code § 3041.61(a). If the eligibility agency suspects that the parent or caretaker

---

[5] Fraud is defined as:
> [t]he intentional act of a parent or caretaker that results in obtaining, continuing, or increasing child care subsidy for which the family is eligible and involves any of the following:
>> (i) A false or misleading statement.
>> (ii) The failure to disclose information.

55 Pa. Code § 3041.3.

[6] An eligibility agency is "[t]he entity designated by the Department with authority to purchase subsidized child care and determine a family's eligibility and co-payment." 55 Pa. Code § 3041.3.

6

is withholding information or has falsified information given, the agency can make collateral contact.[7]  55 Pa. Code § 3041.62(a)(5).

Here, the OIG investigation revealed that Davis's household was receiving income that had not been reported.  (F.F. No. 6.)  Notably, at the hearing, Davis admitted that her son was receiving social security income.  (C.R. Item No. 11, N.T. at 30.)    Additionally, Davis agreed that she was not disputing that there was an overpayment; rather, she was disputing the calculation of the overpayment. (C.R. Item No. 11, N.T. at 30.)

The investigation also revealed that Davis had not been residing at her reported Boothwyn address since September 2007.  (F.F. No. 7.)  When CCIS contacted Davis regarding the results of the investigation, she admitted she no longer resided there and, instead, reported an address of Folcroft, Pennsylvania.  (F.F. No. 8.)  However, Davis subsequently failed to verify the Folcroft address and allowed her case to close.  (F.F. No. 9.)  Indeed, the ALJ found that Davis had been residing in New Jersey since November 2008.  (F.F. No. 17.)  The ALJ found that on November 28, 2008, Davis and her husband purchased a home in New Jersey and that the mortgage for that residence required Davis to occupy the purchased property.  (F.F. Nos. 13-14.)  Although Davis denied residing in New Jersey, the ALJ found that Claimant was not credible.  (F.F. No. 17.)

The Department's regulations require that Davis reside in Pennsylvania to be eligible for benefits.  *See* 55 Pa. Code § 3041.42(a).  Further, Davis had a duty

---

[7] Collateral contact is "[a] form of verification in which the eligibility agency obtains information from a third party."  55 Pa. Code § 3041.3.

7

to verify her address with CCIS, *see* 55 Pa. Code §§ 3041.61(a) & 3041.66, and a duty to report any change of address, *see* 55 Pa. Code § 3041.127(b)(6). Davis also had a duty to report all of the family's income, and she failed to do so. *See* 55 Pa. Code § 3041.32 (concerning income counted to determine eligibility); 55 Pa. Code § 3041.61(a) (concerning parent as primary source of verification to maintain eligibility); 55 Pa. Code § 3041.65 (concerning acceptable forms of verification of income).

The fact that Davis was receiving subsidized child care for a period of time in which she had unreported income and for a period of time in which she did not reside in Pennsylvania support the finding of an overpayment. Davis's failure to reside in Pennsylvania and to verify her address, as well as her failure to report income, all constitute violations of Chapter 3041, thereby serving as grounds for CCIS to seek reimbursement of an overpayment. *See* 55 Pa. Code § 3041.181. Moreover, the fact that CCIS sought recoupment of the overpayment after the case was closed is of no moment. CCIS has an obligation to pursue possible overpayment, even in cases that were voluntarily closed. 55 Pa. Code § 3041.182(b).

To the extent Davis argues that information she provided was not used in the hearings, her arguments are nothing more than a challenge to the ALJ's determinations concerning the weight and credibility of the evidence. In our appellate role, this Court may not reweigh the evidence or disturb those determinations. *Bucks County Children and Youth Social Services Agency v. Department of Public Welfare*, 977 A.2d 1254, 1256 (Pa. Cmwlth. 2009). Additionally, to the extent Davis raises any issues concerning the calculation and the

amount of the overpayment, those issues are not before us. The BHA ordered CCIS to recalculate the overpayment and issue a new notice with a new overpayment amount.[8]

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[8] The ALJ kept the record open for three business days to permit CCIS to submit a report of its overpayment calculations, and CCIS submitted the report. Davis filed a motion to dismiss the appeal in her favor based upon her allegation that she never received a copy of CCIS's submission, even though she was copied on the document. The ALJ refused to consider the motion because the record was closed. Nonetheless, the ALJ determined that, based on the fact that the overpayment must be recalculated, Davis's alleged lack of receipt of the document was not prejudicial to her. Before this Court, Davis complains about the ALJ's refusal to consider her motion and states that, being *pro se*, she was not aware of how the process worked. We agree with the ALJ that Davis suffered no prejudice in this regard given that CCIS must recalculate the overpayment and issue a new notice. Moreover, *pro se* litigants must to some extent assume the risk that their lack of legal training may prove to be their undoing. *Vann v. Unemployment Compensation Board of Review*, 494 A.2d 1081, 1086 (Pa. Cmwlth. 1985).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Belinda Davis,       :
        Petitioner       :
      :
      v.       :   No. 604 C.D. 2017
      :
Department of Human Services,       ;
        Respondent       :

# **O R D E R**

AND NOW, this 18th day of January, 2018, the order of the Department of Human of Services is hereby affirmed.

 

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge